First case on today's docket is the case of the Matter of Estate of Clyde Mitchell, deceased. We have a motion that will be taken with the case. And we have Mr. Penn Teller for the appellant, and we have Mr. William Common for the appellant. You may proceed, Mr. Teller. Thank you, Your Honor. Your Honor, counsel, in the original trial court proceedings, the estate took the position that the transfer of the accounted question here into a payable on death on behalf of the decedent's son and caregiver was invalid because of lack of capacity or undue influence on behalf of the decedent. The trial court ruled against the estate, and this court affirmed. That is, we have an account that has been made payable on death to Ed Mitchell. This court affirmed the trial court's finding that that was not as a result of undue influence or lack of capacity. However, at a later time, the power of attorney transferred that from a payable on death to a joint account. And the court said in the opinion that the power of attorney wasn't filled out properly and that that transfer was invalid. And therefore, the court said the money should be returned to the estate. And the question before this court now is, does that language reverse the finding of the court earlier in the opinion that found it was valid to set up the account as payable on death, overrule the findings of the trial court that it was proper, or did what the court really mean is that transfer was invalid, it should be returned to the estate in the condition it was before the invalid transfer. And that is, before the invalid transfer, this account was payable on death to Ed Mitchell. And so it should be returned to the estate in exactly the condition it was before the invalid transfer. There is nothing in this court's opinion that said that by virtue of attempting this transfer, Ed Mitchell somehow made a forfeiture of his payable on death status in that account. The court, in all likelihood, missed the one reference that Mr. Thomas said. Well, we pointed it out to the court in our brief. It's in a footnote on page 47 or something like that, that this account was payable on death to Ed Mitchell anyway. So even if he transferred the account to himself as joint tenants, if that isn't void, that is, that it doesn't exist, then the account in its original shape would be payable on death to Ed Mitchell, and Ed Mitchell would be entitled to that money. That's what the trial court found. That's what this court affirmed. And there is nothing that says, oh, by the way, we're overruling our earlier part of the ruling by this language that counsel Haines has had on to say, no, by the literal interpretation of the opinion, Ed Mitchell has to give that money back. He forfeits his payable on death status. And this case is a little bit unusual because in a lot of these cases which the court sees, the money gets transferred into a joint account and then the joint tenant spends the money or takes it for himself. That didn't happen here. I think the evidence is that there was more money in the account at the decedent's death than there was when the account was set up. There is absolutely nothing – Excuse me, Mr. Heller, when was the account set up, the payable on death account? Years before the transfer into joint tenancy. Okay. The dates are in the brief, but it was years and years before the time. The testimony was that Ed Mitchell didn't use any of this money for his own benefit. There's nothing that says that as a joint tenancy he was helping himself with the money or using it for his own benefit. It got used for the decedent's benefit if it got used at all. These were fairly frugal people and they accumulated wealth as the years went on as opposed to spending. And even after the death of Clyde Mitchell, Ed didn't take the money. The account is still at the bank in exactly the same status it was prior to the decedent's death. So it's not an issue of paying it back to the estate. The account is still there in the bank in the name of Ed Mitchell and Clyde Mitchell, or alternatively, if the transfer to joint tenancy wasn't appropriate, it's still there in the name of Clyde Mitchell payable on death to Ed. The court said nothing in its opinion that somehow he forfeited this status as payable on death beneficiary by virtue of the fact it was changed, only that it shouldn't have been changed. And if it shouldn't have been changed, then it should be back where it is. There is nothing in the law that says that that somehow makes it a different account. It's not even a different account. It's not like he transferred it from one account to another. He simply changed the title on the account and made new signature cards. That's what the evidence is. And the trial court said, well, I'm really going to have to follow the exact language of the opinion. But the only way the opinion, the underlying opinion, can really be read consistently is that the words, in the same condition that it was, were omitted from the money should be returned to the estate. It should be returned to the estate that it was in before the invalid transfer. That is, that the account should have been in the name of Clyde Mitchell payable on death to Ed Mitchell. And that even if the money is physically transferred to the estate's checking account, Ed Mitchell would have a claim to that money by virtue of his payable on death status, which neither this court nor the trial court has ever interfered with. That was improper, said that he forfeited, or in any other manner said that he wasn't entitled to that designation. In fact, both the trial court and this court affirmed that transfer and that position. And so counsel's position that somehow magically that goes away isn't supported by the findings in the trial court. It isn't supported by the findings in this court. And it isn't supported by the holding in the underlying opinion. Wouldn't a petition for rehearing have been appropriate? Counsel suggested that, but it isn't if the logical interpretation of this court's ruling is, as I suggest, that if the transfer is invalid, if pay is invalid, if this court required a petition for rehearing on every hypothetical disagreement that could be reached in an opinion, you'd become another trial court. There would be all kinds of things that when you remanded, instead of having a remand and a hearing, and then if there's still a dispute to come back, you'd have every dispute here on a petition for rehearing as opposed to being resolved in the trial court upon a remand. So I don't believe that there was anything about that order that suggested a forfeiture or suggested that the estate would somehow take the position that Ed in fact forfeited his payable on death status. The court affirmed that portion of the trial court's finding, and there wasn't any reason to suspect that they would come in and say, well, that they really didn't mean to affirm it or they meant to overrule it by affirming it. I just don't think you have to anticipate every hypothetical problem that might come up and resolve that by petition for rehearing, especially when that issue hasn't arisen. Or alternatively, maybe it's the incumbent upon the estate to say, well, I think based on that I'm entitled, but you need to clarify, do I get that account? Certainly the estate could have called that to the court's attention, but the court doesn't really address that. What is the effect of the fact that it was payable on death in their original opinion, but the holding in the case, the holding in the case below is clear, and that is that the transfer to the admissional payable on death was not invalid. That was a valid transfer, and that was the state of the account before the time of the transfer to the joint account. And again, there's no indication that this is the usual case where the money got taken out of the account and used for something else so that the joint tenant enhanced himself or benefited from the conveyance. It was simply a conveyance for joint tenancy. The account sat there. It's still there. We believe that if the court invalidates the transfer to joint tenancy by operation of law or whatever you want to call it, it goes back to the condition that it had before the invalid transfer, and that would be payable on death. Thank you. Thank you, Mr. Hill. You have the opportunity for rebuttal, Mr. Thomas. May it please the court and Mr. Hill, your honors. This court record is a decision in June of 2011. And in that decision, the court held with regard to three separate bank accounts, two at the First People's State Bank of Newton, one at St. Louis State Bank. Accordingly, we must reverse the court's denial of the special administrative citation with respect to savings accounts at St. Louis State Bank in St. Louis, Illinois, and the savings and checking accounts at People's State Bank in Newton, Illinois. Edward, Mr. Heller's client, has exceeded his attorney authority when he signed financial documents changing the ownership on these accounts. We reverse the portion of the circuit court's judgment that denied the special administrator's citation to recover proceeds contained in these bank accounts. Now, the account we're talking about has approximately $80,000 in it. When this decision was read in June, I think it was June 27, 2011, Edward Mitchell had to know that this court had ordered those accounts to go back into the appropriate state. The appropriate action at that point would have been to file a petition for rehearing or a petition for leave to appeal to this court, to the Supreme Court, to determine or get clarification as to the ownership of that account. This is not the first time the fact that Edward Mitchell had caused that account to be changed from the sole name of Clyde Mitchell to the name of Edward Mitchell. In the original brief that the special administrator filed in 2011, on two specific occasions, in the additional facts on page 8, and in the conclusion on page 42 of that original brief, it was specifically pointed out to this court that Mary Edward Mitchell had caused that account to be changed from the sole name of Clyde Mitchell to people on death to Edward Mitchell, and this occurred while Clyde Mitchell was in the psychiatric ward of Doctors Hospital in Springfield. Mr. Edward Mitchell did not bring this to this court's attention. The special administrator did. We weren't trying to hide anything from this court. All we can presume is that this court was aware of the fact that Clyde Mitchell to people on death upon Clyde's death to Edward Mitchell, because this court had to be well aware of that. It was mentioned twice in the brief, and in spite of that, this court ordered that all three accounts be returned to the estate. We pointed out to this court that no petition for rehearing was filed by Edward Mitchell to ask for clarification of that issue. That should have been done in 2011. Now, 2013, 20 months later, he didn't file a petition or leave to appeal to the Supreme Court to have that issue resolved. It's the position of the special administrator that if the case of Hamilton v. Faulkner cited in our brief is valid in the law of Illinois, when no petition for rehearing was filed, no petition for leave to appeal was filed, the trial court had authority to do nothing other than follow the direction of this court. Was there a hearing on our order on the remand on the issue of the amount of attorney's fees? Was there any kind of a hearing on that? There has not been. There has not been. Okay. We were pointing out to the court, too, that in order for the special administrator, I believe it's the status of the law to collect fees of the special administrator and attorney fees in this case, the estate needs to have gained from the procedure followed by, initiated by the special administrator citation recovery assets. And if this $85,000 is not put back into the estate, the estate will not have a net gain above the cost of the litigation, if that's clear. In other words, the estate will have gained $120,000, but the fees are going to be in excess of $50,000. I don't know what the answer is. But it's the position of the special administrator that if Hamilton versus Faulkner is good law, then there's nothing for the trial court to do but enforce this court's judgment. Now, over a year after this court rendered its decision, the special administrator filed a petition in the trial court to compel Edward Mitchell to put back into the estate the $85,000 account, the savings account at the People's State Bank in Newton, but he had not done it. And so a hearing was held, I think in August of 2012, and the trial court at that time said put it back, but the appellate court is worried that that be done. Instead of putting it back, Ed Mitchell filed this appeal. It is our contention, the special administrator's contention, that this appeal should be dismissed as frivolous. If, as I say, if Hamilton versus Faulkner is good law, then the trial court can do nothing other than order Mr. Mitchell to put the money back in the account. And we are not only asking this court to dismiss Ed Mitchell's appeal, we're asking the court to impose sanctions against Ed Mitchell for bringing this frivolous appeal. And I'm not going to bore the court with reading from cases during my brief, but I would point out to the court that the basis for sanctions is Supreme Court Rule 375B, and the committee comments on 375B provide this paragraph, 375B, relates not only to frivolous appeals, meaning those without merit or no chance of success, but also appeals that are conducted in a frivolous manner, those whose primary purpose is to delay enforcement of judgment, which is the situation here, to cause a party to incur unnecessary expense, which is the situation here, or adjourn a prosecutor in bad faith. And we humbly ask this court to follow the holding of Hamilton versus Faulkner, dismiss this appeal, and determine that it is, in fact, frivolous, based upon the guidelines provided in the committee comments of Supreme Court Rule 375B, and dismiss the appeal and impose sanctions upon Harry W. Mitchell. Thank you very much. Any questions? I don't believe so, Mr. Thomas. Thank you. Mr. Heller? Not once in Mr. Thomas' entire argument did he indicate to you what authority there is to hold that if you don't follow the holding in the case that somehow Ed Mitchell forfeited his payable on death status. He didn't suggest to you anywhere. He said the holding of the case was that Ed Mitchell exceeded his authority when he changed to joint tenancy. And we're not disagreeing with that, and we're not appealing that issue. We're accepting this court's judgment that that's the case. And the question is, what is the effect of exceeding his authority? That is, does the account revert to the way it was before? And counsel hasn't cited one case, hasn't made one argument, even in his brief or before you, as to why some result other than we should give it to the wrong person, a person that's not entitled to it, should be the holding of the trial court or of this court. This court has a right, as we cited in our cases, if there was an error to correct it. The trial court, if it followed the holding of the underlying opinion that Mr. Mitchell had exceeded his authority when he transferred it, find that transfer void, acknowledge that the account would then be held, payable on death of Ed Mitchell, and enter into order accordingly. It is not justification to give the account to the wrong person, the fact that Mr. Thomas won't have brought enough money in the estate to pay the attorney's fees. He said, if I don't bring enough money in, I need this $85,000 to pay attorney's fees. That's not a reason to go contrary to the holding of the court or to create new laws so that we can pay attorney's fees. That's never been a justification of this court or any court that I'm aware of that says we're going to do the wrong thing so we can pay the lawyers. This account was a payable on death account. Both the trial court and this court, in their order, affirmed that transfer, and they said simply that he exceeded his authority. That was the holding. And consistent with that holding, the transfer to joint tenancy is invalid. The account would revert to its state payable on death, Ed Mitchell, and whether the money is turned over to the estate and then given to Ed Mitchell or the bank is directed to release it to Ed Mitchell, that's the result that should happen. And counsel hasn't suggested to you that the right result is anything different. Thank you. Thank you, Mr. Miller and Mr. Thomas, for your briefs and argument. We'll take them under advisement under a ruling in due course.